UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RONALD EUGENE ALLEN, JR., | Case No. 3:22-cv-00176-ART-CSD |
| Petitioner, | ORDER |
| v. | |
| NETHANJAH BREITENBACH,[1] et al., | |
| Respondents. | |

Petitioner Ronald Eugene Allen, Jr., a state prisoner who was found guilty of battery on a protected person causing substantial bodily harm and was sentenced to 8 to 20 years in prison, has filed a second-amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF Nos. 30-8, 22.) This matter is before this court for adjudication of the merits of the second-amended petition, which alleges that the prosecutor engaged in misconduct and his trial counsel failed to object to the introduction of improper prior bad acts and false testimony, impeach a witness, and request a jury instruction. (ECF No. 22.) For the reasons discussed below, this court denies the second-amended petition and a certificate of appealability.

I. **BACKGROUND**

A. **Factual background**[2]

Officer Leopold Karanikolas with the Metropolitan Police Department

---

[1]The state corrections department's inmate locator page states that Allen is incarcerated at Lovelock Correctional Center. Nethanjah Breitenbach is the current warden for that facility. At the end of this order, this court directs the clerk to substitute Nethanjah Breitenbach as a respondent for Respondent Tim Garrett. *See* Fed. R. Civ. P. 25(d).

[2]This court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the second-amended petition.

1

testified that on August 9, 2016, he responded to "a harassment call between a male and female" in Las Vegas, Nevada. (ECF No. 29-3 at 51–52.) When Officer Karanikolas arrived at the scene, he saw Allen sitting in a car reading a newspaper. (*Id.* at 53.) Allen told Officer Karanikolas that he was meeting his family and waiting for them to arrive. (*Id.* at 54.) Officer Karanikolas got back in his vehicle, and while he was trying to find Allen in a database, "a black female ran up to [his] car on the driver's side." (*Id.*) The woman "was very agitated, . . . upset, very scared, very frantic." (*Id.* at 56.) While Officer Karanikolas was trying to interact with the woman, Allen "jumped out of [h]is vehicle, very quickly." (*Id.*) Officer Karanikolas got out of his vehicle too and conducted a pat down search of Allen at the front of the police vehicle. (*Id.* at 57.)

After the pat down, Allen ran to the passenger side of Officer Karanikolas's vehicle to get to the woman whom Officer Karanikolas had been speaking with. (*Id.* at 57.) Officer Karanikolas ran around his vehicle in the opposite direction to confront Allen, and when Officer Karanikolas and Allen were both at the back of the vehicle, Allen "pushed through" Officer Karanikolas to get to the woman. (*Id.* at 58, 60, 98.) Due to the impact, Officer Karanikolas had "to step back in order to catch [his] balance," and when he did so, he "felt like a pop in the back of [his] body in [his] leg," causing him to "drop[ ] to the ground." (*Id.* at 61.) Allen then continued to run in the direction of the woman. (*Id.* at 64.) Officer Karanikolas tased Allen, causing him to fall to the ground, and Officer Karanikolas "hobbled" over to Allen and took him into custody. (*Id.* at 64–66.) Officer Karanikolas later learned that he had a partial tear in his right Achilles. (*Id.* at 68.)

Lisa Gordon, who was with the woman Allen was pursuing, testified that she observed the impact between Allen and Officer Karanikolas. (*Id.* at 29-3 at 128, 131.) According to Gordon, Allen "punched" Officer Karanikolas. (*Id.* at 131.)

**B.   Procedural background**

The jury found Allen guilty of battery on a protected person causing

2

substantial bodily harm. (ECF No. 30-4.) Allen was adjudicated under the small habitual criminal statute and sentenced to 8 to 20 years in prison. (ECF No. 30-8.) Allen appealed, and the Nevada Court of Appeals affirmed on April 16, 2019. (ECF No. 30-23.) Remittitur issued on May 13, 2019. (ECF No. 30-24.)

On May 27, 2020, Allen filed a state petition for writ of habeas corpus. (ECF No. 30-27.) The state court denied post-conviction relief on August 18, 2021. (ECF No. 31-7.) Allen filed a post-conviction appeal, and the Nevada Court of Appeals affirmed the denial on April 11, 2022. (ECF No. 31-18.) Remittitur issued on May 6, 2022. (ECF No. 31-19.)

On or about April 13, 2022, Allen dispatched his *pro se* federal habeas corpus petition. (ECF No. 6 at 6.) On May 12, 2022, this court screened Allen's *pro se* petition and granted Allen's motion for the appointment of counsel, and on June 6, 2022, this court appointed the Federal Public Defender to represent Allen. (ECF Nos. 5, 12.) Allen filed a counseled first-amended petition and counseled second-amended petition on June 10, 2022, and October 21, 2022, respectively. (ECF Nos. 14, 22.)

On April 20, 2023, Respondents moved to dismiss Allen's second-amended petition. (ECF No. 37.) This court denied the motion, finding that grounds 3 and 4 are technically exhausted and procedurally defaulted. (ECF No. 40.) This court then deferred consideration of whether Allen can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome the procedural default of grounds 3 and 4 until after the filing of an answer and reply in this action. (*Id.*) Respondents answered the second-amended petition on July 21, 2023, and Allen replied on October 26, 2023. (ECF Nos. 41, 46.)

II.     **GOVERNING STANDARD OF REVIEW**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### III. DISCUSSION

#### A. Ground 1—prosecutorial misconduct

In ground 1, Allen alleges that, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments, during rebuttal argument, the prosecution committed misconduct when it improperly denigrated the defense theory and disparaged defense counsel. (ECF No. 22 at 5.) Allen takes issue with the following comments made during the prosecution's surrebuttal closing argument: "Folks, defense counsel comes up here and tells you what, when you have an overwhelming amount of evidence in this case and the defendant is absolutely boxed into a corner, this is what happens. Defense counsel does this, blames everybody other than the defendant. Right?" (ECF No. 30-3 at 43.)

#### 1. State court determination

In affirming Allen's judgment of conviction, the Nevada Court of Appeals held as follows:

> Allen argues the State committed prosecutorial misconduct during closing rebuttal argument by disparaging defense counsel and his theory of defense. Specifically, he claims the State erred by arguing, "folks, defense counsel comes up here and tells you what, when you have an overwhelming amount of evidence in this case and the defendant is absolutely boxed into a corner, that is what happens. Defense counsel does this, blames everyone other than the defendant. Right?"
> Because Allen did not object to this statement at trial, he is not entitled to relief absent a demonstration of plain error. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). Even assuming, without deciding, the prosecutor's comments were improper, Allen failed to demonstrate any error affected his

5

substantial rights. *See id.* (ECF No. 30-23 at 2–3.)

### 2. Standard for prosecutorial misconduct claims

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In making that determination, this court looks to various factors: "the weight of the evidence, the prominence of the comment in the context of the entire trial, whether the prosecution misstated the evidence, whether the judge instructed the jury to disregard the comment, whether the comment was invited by defense counsel in summation and whether defense counsel had an adequate opportunity to rebut the comment." *Floyd v. Filson*, 949 F.3d 1128, 1150 (9th Cir. 2020) (quoting *Hein v. Sullivan*, 601 F.3d 897, 914 (9th Cir. 2010)). "[P]rosecutorial misconduct[ ] warrant[s] relief only if [it] 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

### 3. Analysis

Because the prosecution is allowed to comment and criticize defense theories, it is not readily apparent that the prosecutor's comment was improper. *See United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) ("Criticism of defense theories and tactics is a proper subject of closing argument."); *see also United States v. Lopez-Alvarez*, 970 F.2d 583, 597 (9th Cir. 1992) ("[T]he propriety of the prosecutor's remarks must be judged in relation to what would constitute a fair response to the remarks of defense counsel."). However, even if the prosecutor's comment about the defense shifting blame was improper, as the

Nevada Court of Appeals reasonably noted, it did not warrant the granting of relief. This comment was isolated, did not imply that defense counsel was acting unethically, was innocuous, and was meant to draw attention to an unfruitful defense tactic. *See Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (concluding that the State's improper closing argument did not infect the trial with unfairness because "the prosecutor's statements were supported by the evidence and reasonable inferences that could be drawn from the evidence"). Accordingly, Allen fails to demonstrate that the prosecutor's comment rendered his trial fundamentally unfair or that it had a substantial and injurious influence on the jury's verdict. Because the Nevada Court of Appeals' denial of this claim constituted an objectively reasonable application of federal law and was not based on an unreasonable determination of the facts, Allen is denied federal habeas relief for ground 1.

### B.   Ground 2—counsel's failure to object to prior bad act evidence

In ground 2, Allen alleges that his trial counsel was ineffective for failing to object to prosecutorial misconduct when the State improperly introduced prior bad acts evidence in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 22 at 7.) Allen takes issue with the following comments made during the prosecution's surrebuttal closing argument:

> The evidence in this case is overwhelming. As I told you in voir dire, sometimes we're left with just one person, convicted felon, drug addict, you name it - - it goes on and on. That's what we're left with - - or somebody - - a home invasion where nobody is home and we have no idea who it is and we have to piece it together. Not this case.

(ECF No. 30-3 at 43.)

#### 1.   State court determination

In affirming the denial of Allen's state post-conviction petition, the Nevada Court of Appeals held as follows:

> First, Allen claimed that his trial counsel was ineffective for failing to object during the State's rebuttal argument when the State improperly implied that it had personal knowledge of Allen's prior

7

> bad acts. During closing arguments, the State may "assert inferences from the evidence and argue conclusions on disputed issues." *Truesdell v. State*, 129 Nev. 194, 203, 304 P.3d 396, 402 (2013). The State is also allowed reasonable latitude to argue concerning the credibility of witnesses. *Rowland v. State*, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002). A review of the State's rebuttal argument reveals the State did not imply that Allen committed uncharged prior bad acts but rather argued that the evidence produced at trial proved that Allen was guilty and urged the jury to find that its witnesses were credible. Accordingly, Allen did not demonstrate that his counsel's failure to object to the challenged statements fell below an objective standard of reasonableness.
>
> In addition, significant evidence of Allen's guilt of battery upon an officer resulting in substantial bodily harm was presented at trial. The evidence included an officer's testimony that he was standing between Allen and a woman when Allen attempted to run toward the woman. The officer stated that Allen increased his speed when he realized that the officer was in his way. The officer testified that Allen ran into him at a high rate of speed and either pushed or punched him and that the resulting impact knocked him backward. The officer felt a pop in his leg and fell to the ground. The officer was subsequently transported to a hospital and required treatment for a partial tear in his right Achilles tendon. A second witness also testified that she viewed the incident and saw Allen run to the officer and punch him. In light of the significant evidence of Allen's guilt produced at trial, Allen failed to demonstrate a reasonable probability of a different outcome had counsel objected to the challenged statements during the State's rebuttal argument. Therefore, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.

(ECF No. 31-18 at 3–4.)

### 2.     Standard for ineffective assistance of counsel claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 3. Analysis

Nevada law prohibits the admission of "[e]vidence of other crimes, wrongs or acts . . . to prove the character of a person in order to show that the person acted in conformity therewith." Nev. Rev. Stat. § 48.045(2). However, as the Nevada Court of Appeals reasonably determined, the prosecution did not violate this law by implying that Allen committed uncharged prior bad acts. Indeed, the prosecutor's "[n]ot this case" comment following his discussion of "convicted felon[s], drug addict[s]" shows that the prosecutor was not imputing any bad act commentary onto Allen. Rather, the prosecutor appears to have been merely explaining that there was overwhelming evidence of Allen's guilt in this case due

to Officer Karanikolas's testimony compared to, for example, a case in which the only evidence presented comes from unreliable sources such as "convicted felon[s], [or] drug addict[s]." Further, the jury was instructed that the arguments of counsel were not evidence. (ECF No. 30-1 at 8.) Thus, Allen fails to demonstrate that his trial counsel acted deficiently by not objecting to the prosecutor's comment. Because the Nevada Court of Appeals' denial of this claim constituted an objectively reasonable application of *Strickland*'s performance prong and was not based on an unreasonable determination of the facts, Allen is denied federal habeas relief for ground 2.

### C. Ground 3—counsel's failure to object to the false testimony

In ground 3, Allen alleges that his trial counsel was ineffective for failing to object to the prosecution's presentation of false testimony in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 22 at 8.) Allen explains that Officer Karanikolas changed his testimony dramatically between the preliminary hearing and the trial. (*Id.* at 9.)

#### 1. Procedural default

This court previously determined that ground 3 was technically exhausted because it would be procedurally barred in the state courts. (ECF No. 40 at 6–7.) Allen previously argued that he could demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to excuse the default. (*Id.*) This court found that Allen had met three of the elements of *Martinez*: (1) he had no counsel during his state post-conviction habeas corpus proceedings, (2) his state post-conviction petition was the initial proceeding regarding claims of ineffective assistance of trial counsel, and (3) Nevada law requires that a claim of ineffective of assistance of trial counsel be raised in a post-conviction habeas corpus proceeding. (*Id.*) However, this court deferred consideration of the fourth element of *Martinez*: whether the claim of ineffective assistance of trial counsel is substantial. (*Id.*) This court will now determine, pursuant to a *de novo* review, whether Allen's ineffective

assistance of trial counsel claim is substantial. *See Ramirez v. Ryan*, 937 F.3d 1230, 1243 (9th Cir. 2019).

### 2. Background information

During cross-examination, Allen's trial counsel asked Officer Karanikolas if he "remember[ed] testifying at [the] preliminary hearing that . . . there was no . . . collision" between him and Allen. (ECF No. 29-3 at 84.) Officer Karanikolas responded that he did not remember his preliminary hearing testimony because he was still recovering from surgery and was on medication. (*Id.* at 84–85.) Allen's trial counsel then asked Officer Karanikolas if (1) he "recall[ed] testifying at the preliminary hearing, [']So then that's when I had to step back because he had kind of pushed through me to get to me, kind of swam through me[']?" and (2) if he "remember[ed] testifying at the preliminary hearing . . . that [he did not] think [Allen] had any intent to make contact with [him]?" (*Id.* at 100, 101.) Later, at the prosecutor's request, Officer Karanikolas read the pertinent portions of his preliminary hearing testimony to the jurors as follows:

> But you were never under the impression he wanted to injure [you] in any way? Answer is: No. Question - - question is: Or ever - - or even make contact with you? Answer is: No. He wanted to go after her. Question is: He just - - that's exactly right. He wanted to go after someone else. She was there. Answer was: Right. And then, there happened to be some kind of collision maybe. Answer was: No, there was not. There was not a collision. He had to get past me to get to her. Question was: All right. Answer was: So I became - - so when you say he didn't want to go after me, let me go ahead and clarify. Answer: Correct. I was not the primary target. That is correct. However, in order to get to her, he had to get through me. . . . Question is: Okay. Describe how that happened. Answer is: Like I said, I was so - - there was the car and the rear taillights. Because that's when were - - that's where we're at. And then this was me. So he's trying to go between the two of us, the car and the rear taillights is what he was trying to do. So I remember him kind of pushing both sides to get kind of - - kind of like when you're swimming, kind of like a swimming motion is just the best way I could describe it - - is the best way I could describe it. Okay. Answer: So that's - - so then that's when I had to step back because he kind of pushed me to go through me, kind of swim through me. . . . Answer: And that's when I stepped back. And that's when I felt the pain. I mean, it just - - I mean, it was a pop and a pain.

(*Id.* at 121–123.) During the prosecutor's follow-up questions, Officer Karanikolas

11

testified that (1) the "preliminary hearing transcript kind of failed to articulate exactly what the heck happened that day," (2) he did not "mean to lie to anybody at [the] preliminary hearing," and (3) he was "just trying to answer the questions as best as" he could at the preliminary hearing but he was nervous and in a lot of pain at the time. (*Id.* at 123–124.)

### 3. Analysis

As Allen correctly asserts, it is improper for the prosecution to obtain a conviction using false evidence. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (holding that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment"). However, Allen fails to demonstrate that Officer Karanikolas's trial testimony amounted to false evidence. Rather, it appears that there were merely discrepancies between Officer Karanikolas's preliminary hearing testimony and trial testimony. And rather than making an unfruitful motion to strike Officer Karanikolas's testimony pursuant to *Napue*, Allen's trial counsel reasonably confronted these discrepancies by impeaching Officer Karanikolas with them during cross-examination. Consequently, because Allen fails to support his contention that his trial counsel acted deficiently, Allen's ineffective-assistance-of-counsel claim is not substantial. Therefore, Allen fails to demonstrate the requisite prejudice necessary to overcome the procedural default of ground 3. Ground 3 is dismissed.

### D. Ground 4—counsel's failure to impeach a witness

In ground 4, Allen alleges that his trial counsel was ineffective for failing to impeach Officer Karanikolas with his medical records in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 22 at 11.)

### 1. Procedural default

As was the case with ground 3, this court previously determined that ground 4 was technically exhausted because it would be procedurally barred in

the state courts. (ECF No. 40 at 6–7.) Again, Allen argued that he could demonstrate cause and prejudice under *Martinez* to excuse the default. (*Id.*) Like with ground 3, this court found that Allen had met the first three elements of *Martinez* and deferred consideration of the fourth element: whether the claim of ineffective assistance of trial counsel is substantial. (*Id.*) This court will now determine, pursuant to a *de novo* review, whether Allen's ineffective assistance of trial counsel claim is substantial. *See Ramirez*, 937 F.3d at 1243.

### 2. Background information

In a consultation at University Medical Center on August 9, 2016, Richard Wulff, MD, stated the following regarding Officer Karanikolas: "Leopoldo is a 38-year-old male police officer who was chasing a suspect this evening. He turned to chase the suspect as he turned a different direction, and he felt a pop in the back of his right ankle." (ECF No. 48-1 at 15.) In another medical record from Sikisam Magoyag, MD, on August 9, 2016, at University Medical Center, it was reported that Officer Karanikolas "was at work today chasing a suspect when he twisted his right ankle." (*Id.* at 52.) And finally, in a medical record from Jefferson Bracey, DO, on August 9, 2016, at University Medical Center, it was reported that Officer Karanikolas "was chasing after a suspect. He stepped funny and felt a pop in his right Achilles area and has pain in that area." (*Id.* at 237.)

### 3. Analysis

Because Officer Karanikolas's medical records do not provide that Allen made any contact with Officer Karanikolas during their interaction—instead providing only that Officer Karanikolas's injury occurred during his pursuit of Allen—it would have been beneficial for Allen's trial counsel to have impeached Officer Karanikolas with his medical records. However, even if Allen's trial counsel acted deficiently in this regard, Allen fails to demonstrate prejudice. *See Doe v. Ayers*, 782 F.3d 425, 431 (9th Cir. 2015) (concluding that the defendant's trial counsel "could have done a much better job of impeaching [the witness], . . . but

the failures regarding impeachment of [the witness] are of comparatively little consequence"). Indeed, when looking at the overall interaction between Officer Karanikolas and Allen, Officer Karanikolas's medical records were consistent with his trial testimony. Officer Karanikolas testified that after patting down Allen, Allen ran around Officer Karanikolas's vehicle, and Officer Karanikolas pursued him. When Officer Karanikolas confronted Allen, Allen pushed through him. Allen then continued to run, and Officer Karanikolas tased him and took him into custody. As such, given that Officer Karanikolas's medical records were harmonious with the bigger picture regarding Officer Karanikolas's general pursuit of Allen, impeaching Officer Karanikolas with his medical records would have had little consequence to the outcome of Allen's trial. Consequently, because Allen fails to support his contention that his trial counsel's deficiency resulted in prejudice, Allen's ineffective-assistance-of-counsel claim is not substantial. Accordingly, Allen fails to demonstrate the requisite prejudice necessary to overcome the procedural default of ground 4, so it is dismissed.

### E. Ground 5—counsel's failure to request a jury instruction

In ground 5, Allen alleges that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of resisting a public officer in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 22 at 12.) Although the jury was not instructed on the lesser-included offense of resisting a public officer, it was instructed on lesser-included offenses generally and given the following verdict options: not guilty, guilty of battery on a protected person with substantial bodily harm, guilty of battery with substantial bodily harm, guilty of battery on a protected person, and guilty of battery. (ECF Nos. 30-4 (verdict form), ECF No. 30-1 at 14 (jury instruction on lesser-included offenses)).

#### 1. Nevada law

Under Nevada law, the crime of resisting a public officer is defined as

14

follows: "[a] person who . . . willfully resists, delays or obstructs a public officer in discharging or attempting to discharge any legal duty of his or her office." Nev. Rev. Stat. § 199.280. "Where no dangerous weapon is used in the course of such resistance, obstruction or delay," resisting a public officer is punished as a misdemeanor. Nev. Rev. Stat. § 199.280(3).

Further, regarding lesser-included offenses, under Nevada law, "if the prosecution has met its burden of proof on the greater offense and there is no evidence at the trial tending to reduce the greater offense, an instruction on a lesser included offense may properly be refused." *Lisby v. State*, 414 P.2d 592, 595 (Nev. 1966). However, "if there is any evidence at all, however slight, on any reasonable theory of the case under which the defendant might be convicted of a lower degree or lesser included offense, the court must, if requested, instruct on the lower degree or lesser included offense." *Id.* The trial court "must focus on whether credible evidence admitted at trial warranted a lesser included offense, not whether the evidence was sufficient to prove the greater one." *Rosas v. State*, 147 P.3d 1101, 1106 n.10 (Nev. 2006) (internal quotation marks omitted), *abrogated on other grounds by Alotaibi v. State*, 404 P.3d 761 (Nev. 2017).

### 2. State court determination

In affirming the denial of Allen's state post-conviction petition, the Nevada Court of Appeals held as follows:

> Allen appeared to claim that his trial counsel was ineffective for failing to request the trial court to instruct the jury concerning resisting a public officer as a lesser-included offense of battery upon an officer. "[R]esisting a public officer under NRS 199.280 is a lesser-included offense of battery upon an officer under NRS 200.481." *Rosas v. State*, 122 Nev. 1258, 1264, 147 P.3d 1101, 1105 (2006), *abrogated on other grounds by Alotaibi v. State*, 133 Nev. 650, 654, 404 P.3d 761, 765 (2017). However, as explained previously, there was significant evidence presented at trial that Allen committed battery. *See* NRS 200.481(1)(a) ("Battery means any willful and unlawful use of force or violence upon the person of another." (internal quotation marks omitted)). Further, Allen did not identify any evidence at trial tending to reduce the greater offense. Therefore, Allen did not demonstrate his counsel acted in an objectively unreasonable manner by failing to request the instruction. *See*

15

> *Rosas*, 122 Nev. at 1265, 147 P.3d at 1106 ("[I]f the prosecution has met its burden of proof on the greater offense and there is no evidence at the trial tending to reduce the greater offense, an instruction on a lesser included offense may properly be refused." (quotation marks omitted)). Nor did Allen demonstrate a reasonable probability of a different outcome had counsel requested the trial court to instruct the jury on resisting a public officer. *See Crawford v. State*, 121 Nev. 744, 756 & n. 30, 121 P.3d 582, 590 & n.30 (2005) (noting a trial court's error in refusing to give a jury instruction will be harmless when it is clear beyond a reasonable doubt that the jury's verdict was not attributable to the error). Therefore, we conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

(ECF No. 31-18 at 5–6.)

### 3. Analysis

The Nevada Court of Appeals reasonably determined that Allen failed to demonstrate that his trial counsel acted deficiently. Rather than arguing that Allen never battered Officer Karanikolas which would have supported a resisting jury instruction, Allen's trial counsel's defense theory was that Allen was not guilty as charged because the injury he inflicted on Officer Karanikolas was accidental. (*See* ECF No. 30-3 at 34–37 (arguing that there was no intentional touching).)[3] However, even if Allen's trial counsel acted unreasonably in not requesting a resisting instruction out of diligence, the Nevada Court of Appeals reasonably determined that Allen failed to demonstrate prejudice. Given that Officer Karanikolas and Gordon testified that Allen used force against Officer Karanikolas and Allen failed to present any evidence to the contrary, Allen fails to demonstrate any likelihood that the jury would have convicted him of an offense not involving battery. *See Crace v. Herzog*, 798 F.3d 840, 849 (9th Cir. 2015) ("[I]n ineffective-assistance cases involving a failure to request a lesser-included-offense instruction, *Strickland requires* a reviewing court to assess the likelihood that the defendant's jury would have convicted only on the lesser included offense." (emphasis in original)). Because the Nevada Court of Appeals'

---

[3]Allen's trial counsel also argued causation, explaining that Officer Karanikolas may have suffered from a chronic injury to his Achilles. (*See* ECF No. 30-3 at 38.)

denial of this claim constituted an objectively reasonable application of *Strickland* and was not based on an unreasonable determination of the facts, Allen is denied federal habeas relief for ground 5.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). This court has evaluated the claims within the petition for suitability for the issuance of a COA. Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.* Applying these standards, this court finds that a certificate of appealability is unwarranted.

## V.    CONCLUSION[4]

It is therefore ordered that the § 2254 petition [ECF No. 22] is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to substitute Nethanjah Breitenbach for Respondent Tim Garrett, enter judgment, and close this case.

Dated this 10th day of January 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

---

[4] Allen requests this court conduct an evidentiary hearing. (ECF No. 22 at 14.) This court declines to do so because it can decide the petition on the pleadings.

17